CASE 61—ACTION TO RECOVER DAMAGES FOR BREACH OF CONTRACT—
SEPT. 26.

# Parry Manufacturing Co. v. Lyon, &c.

### APPEAL FROM TAYLOR CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.   REVERSED.

SALES—AGENCY TO SELL VEHICLES—REFUSAL TO DELIVER TO AGENT
—REVOCATION OF AGENCY—MEASURE OF DAMAGES FOR REFUSAL TO
DELIVER TO BUYER.

Held: 1. Where plaintiffs and defendant entered into a contract
designated as "an agency contract for the sale of vehicles," by
which it was provided that vehicles shipped to plaintiffs were
to remain the property of defendant, and defendant reserved
the right to have any of such vehicles returned, and also the
right to revoke at will the contract creating the agency, plain-
tiffs can not recover damages for defendant's refusal to deliver
vehicles ordered.

2. If defendant refused to deliver vehicles sold to plaintiffs and
not embraced in the agency contract, plaintiffs are entitled to
recover only the difference between the contract price and the
market price at the time and place of delivery, and evidence
as to prospective profits is not admissible.

H. W. RIVES, FOR APPELLANT.

The plaintiff sued for and recovered damages for an alleged
breach of contract in the sale of a carload of vehicles, phae-
tons, buggies, etc., to be delivered at Monticello, Ky.   The
verdict was $240, which we claim is not only excessive but un-
authorized by the law or the facts.

For appellant it is contended, that under the written con-
tract there can be no recovery, and that the peremptory in-
struction asked by defendant should have been given.

The court erred in admitting evidence as to the prices at
which appellees might have sold the vehicles ordered, at. re-
tail, and in permitting the jury in estimating the damages,
to consider the prospective profits over the wholesale price,
that the appellees expected to realize.

The court erred in instructing the jury that they might find
the difference between the price of said goods as stated in the

bill of sale, and what they were worth at Monticello, Ky., less the freight from the factory to Monticello.

GARNETT & GARNETT AND H. S. ROBINSON, ATTORNEYS FOR APPELLEES.

The appellant seeks a reversal:

1. Because the court erred in admitting testimony for plaintiffs relating to prospective profits that they would have made by retailing the vehicles at Monticello.

2. Because the court erred in giving instructions to the jury. We claim there was no evidence introduced as to prospective profits. The court would not permit the witness to answer relative prospective profits, but required the witness to state what the vehicles would have been worth in Monticello after the payment of freight charges, more than appellees had contracted to pay for them.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

The appellees claim they had a contract with the appellant by which it promised and agreed to deliver to them at Monticello, Ky., a car load of vehicles, consisting of phaetons, buggies, etc., at certain prices, and, having failed to do so, it violated the contract, resulting in their damage, for which a recovery is sought. It appears from the record that the appellees first proposed to engage in the buggy and saddlery business, and began to negotiate with the appellant to get vehicles from it. This negotiation resulted in bringing an agent of the appellant and the appellees together in December, 1898. The appellant has printed blanks, upon which it requires customers and agents to make application for vehicles. It also has a contract called a "special agency contract," and it requires those whose orders for vehicles it approves to sign it. It is admitted by W. R. Lyon, representing the firm, that the special agency contract was to be signed before any vehicles were to be shipped upon the orders which he had made, and in his letters he asked for delay in signing that

contract.  In his testimony he said he understood that the orders for specifications which he made for vehicles were in connection with the special agency contract that was to be signed by him and returned to and accepted by the appellant, and that the company would be under no obligation to prepare and ship the vehicles until it should be signed by him and returned to the company.  So the orders which the appellees made, for vehicles were not to be complied with until the special agency contract was executed by them and accepted by the appellant.  In order to determine what is the real contract between the parties, it is essential to consider the written application for vehicles together with the special agency contract, for these writings together constituted the evidence of the contract between the parties, if one was actually made.  In this connection, it is proper to state that the appellant claims that the appellees were simply to be its agents in the sale of such vehicles as might be shipped to them, and it had the right, under the terms of the contract, to ship or not to ship, the vehicles; that if it had shipped the vehicles to the appellees, it had the right to order them returned to it; and that, as it had that right, the right to withhold the shipment existed.  In the written order which the appellees made for the vehicles it is expressly stated that "all the goods shipped on this contract, and the proceeds of the sale thereof, shall be and remain the property of Parry Manufacturing Company, and subject to its orders."  In the special agency contract, it is provided, among other things, that the appellees were to be the agents of the appellant in the sale of the vehicles; that this agency was to continue from the 1st of March, 1899, at 9 o'clock a. m., and to terminate at a like hour on December 1, 1899, "unless

sooner revoked by said Parry Manufacturing Company;"
that a notice from it to the appellees, stating its inten-
tion to abrogate the contract, was to have the effect of
immediately canceling the same. It is further provided
that all specifications from the appellees for shipment dur-
ing the life thereof should become part of it; that the ap-
pellees were to recrate and reship any and all of such
vehicles at any time it might elect; that the appellees
should be compensated by the appellant for their services
by receiving a commission equal to the difference between
the consigned invoice price and the net amount realized
on the sale of the goods; that the proceeds of the sales
should remain its property; that the agents were author-
ized to retain as their commission all cash in excess of the
invoice, less 5 per cent.; and that, to make certain the
character of the business relationship the appellees should
sustain to it, the contract provides "that this is an agency
contract for the sale of vehicles." There is no ambiguity
in the writings which are claimed by the appellees to be
the evidence of the contract between the appellant and
themselves. It is a question of law for the court whether
the terms of the writings amount to a contract of sale,
or whether by its terms the appellees were to act as the
agents of the appellant in the sale of the vehicles to be
shipped under it. The appellees were designated as agents.
It is expressly said in the contract that they are to act
as agents in the sale of the vehicles; that the vehicles
were to remain the property of the appellant, and when
sold the proceeds were to belong to it, less commissions
stated. Appellant reserved the power to have such vehi-
cles as might be shipped to the appellees returned to it.
The parties were capable of making an agreement, and to
determine what the rights of each should be thereunder.
The appellees agreed that the appellant should have the

right to revoke and cancel the contract at will, and the refusal to ship the goods was tantamount to a revocation of the contract.  Besides, if the appellant had the right to order any or all the vehicles which it shipped the appellees returned to it, the right to refuse to ship the vehicles which it could order returned necessarily existed. The contract designates the period in which the contract should exist, but this period could be terminated upon a revocation of it by appellees, not for cause,—but if it chose to do so in the exercise of its judgment.  We are of the opinion that, as the appellant had the right to revoke the contract creating the agency at will, no damage could accrue to the appellees for failure to deliver the vehicles, the shipment of which was contemplated under the contract.

The appellees insist that order No. 2, for the special lot of vehicles, four or five in number, was not embraced in the contract; that they were to pay cash for them.  Taking the order with the special agency contract, this contention is not sustained, because the order in express terms says the vehicles are to remain the property of the appellees.  However, if it can be shown on another trial that order No. 2 was not intended to be embraced as part of the "special agency contract," and under proper instructions the jury reaches the conclusion that a contract of sale of the vehicles mentioned in order No. 2 was actually made, then the appellees would be entitled to recover the difference between the contract price at Monticello and the market price of them or like vehicles at that time and place.  The question of prospective profits in the sale of vehicles should not be permitted to be proven.

The court erred in instructing the jury, and, on a return of the case, should give the law in accordance with this opinion.  The cause is reversed for proceedings consistent with this opinion.